George SASSOWER, Petitioner,

v.

The SHERIFF OF WESTCHESTER COUNTY, Respondent.

No. 86 Civ. 7403 (DNE).

United States District Court, S.D. New York.

Dec. 4, 1986.

## MEMORANDUM AND ORDER

EDELSTEIN, District Judge:

Petitioner, *pro se,* brought a habeas corpus action pursuant to 28 U.S.C. Section 2254 to challenge a term of incarceration of thirty days imposed for his conviction on sixty-three counts of criminal contempt.[1] This court referred this habeas corpus petition to Magistrate Nina Gershon on October 3, 1986. On November 24, 1986, Magistrate Gershon held a hearing on this matter and by report and recommendation also dated November 24, 1986, recommended that the petition for the writ be granted. This court, after a *de novo* review and consideration of the objections to the Magistrate's report, adopts the findings and recommendations of the Magistrate.

The petitioner, George Sassower, was found guilty of sixty-three counts of non-summary criminal contempt by a New York State Special Referee. The contempt arose from claims that the petitioner, an attorney, continued to serve pleadings in a number of civil proceedings after being ordered not to do so by Justices Sinclair and Grammerman of the New York Supreme Court. On January 30, 1985, Lee Feldman, the court appointed receiver for a party to these civil proceedings, moved to have Sassower punished for contempt. The matter was referred to Special Referee Donald Diamond by Justice Evans of the New York Supreme Court. Diamond, without conducting an evidentiary hearing or a trial, found Sassower guilty of sixty-three counts of non-summary criminal contempt and recommended that Sassower be fined 250 dollars for each offense and be confined for thirty days.

Justice Evans adopted the Referee's finding of guilt but denied, with leave to re-

new, the recommendation that a fine and jail sentence should be imposed. On January 21, 1986, Justice Evans denied a renewed motion to confirm the referee's report and to punish Sassower for contempt. The Appellate Division, First Department, however, reversed Justice Evans' denial of the motion to renew and modified Justice Evans' orders to the extent of imposing a sentence of thirty days incarceration.

The United States Supreme Court has held that a defendant in a criminal contempt proceeding is entitled to all fundamental procedural protections. *See Bloom v. Illinois,* 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968); *United States ex rel. Vuitton v. Karen Bags Inc.,* 592 F.Supp. 734 (S.D.N.Y.1984), *aff'd sub nom., United States ex rel. Vuitton v. Klayminc,* 780 F.2d 179 (2d Cir.1985). Such procedural protections include a finding of guilt beyond a reasonable doubt, *In re Weiss,* 703 F.2d 653, 662 (2d Cir.1983), and that "requisite intent was present." *In re Irving,* 600 F.2d 1027, 1037 (2d Cir.1979). When the contempt is committed in the face of the court, the defendant is protected by a reduced standard of due process. *See United States v. Lumumba,* 741 F.2d 12 (2d Cir.1984). This, however, is not the situation in the instant petition. Thus, this case, although raised in an objection to the Magistrate's report and recommendation, is inapposite to the issues addressed in Sassower's petition.

Every Appellate Division in the State of New York has recognized the significance of *Bloom v. Illinois. See N.A. Development Co. v. Jones,* 99 A.D.2d 238, 242, 472 N.Y.S.2d 363 (1st Dep't 1984); *Holtzman v. Beatty,* 97 A.D.2d 79, 82, 468 N.Y.S.2d 905 (2d Dep't 1983); *Ingraham v. Maurer,* 39 A.D.2d 258, 259, 334 N.Y.S.2d 19 (3rd Dep't 1972); *State University v. Denton,* 35 A.D.2d 176, 181, 316 N.Y.S.2d 297 (4th Dep't 1970). In *Ingraham v. Maurer,* 39 A.D.2d at 259, 334 N.Y.S.2d 19, the Court acknowledged, after citing *Bloom,* "that a criminal contempt proceeding is a criminal proceeding to which the basic fundamen-

---

1. Contempt was found under New York Judiciary Law section 750 *et seq.*

tals are applicable to the same extent as in any other criminal trial. While the *Bloom* case was directed solely at the issue of the right to a jury trial, it, nevertheless, equates the contempt proceeding with an ordinary criminal proceeding." In *N.A. Development Co.*, 99 A.D.2d at 242, 472 N.Y.S.2d 363, The Appellate Department First Department, after citing *Bloom*, acknowledged that criminal contempt must be proven beyond a reasonable doubt. *Accord County of Rockland v. Civil Service Employees Association, Inc.*, 62 N.Y.2d 11, 14, 475 N.Y.S.2d 817, 464 N.E.2d 121 (1984).

In finding Sassower guilty, the Referee based his report entirely on the papers before him. There was no evidentiary hearing or trial. There is no indication that the determination of guilt was based on a finding that the evidence proved petitioner's guilt, including the requisite intent, beyond a reasonable doubt. Further, the Referee failed to take into consideration the constitutional requirements of non-summary criminal contempt proceedings.

Accordingly, this Court adopts the findings and recommendations of Magistrate Gershon, and the petition is hereby granted.

SO ORDERED.

## REPORT AND RECOMMENDATION

### Nov. 24, 1986

NING GERSHON, United States Magistrate:

In this habeas corpus petition brought pursuant to 28 U.S.C. § 2254, petitioner George Sassower, *pro se*, challenges a term of incarceration (thirty days) imposed by the Supreme Court of the State of New York, Appellate Division, First Department, on a finding that petitioner was guilty of sixty-three counts of criminal contempt. *In re Jerome Barr v. Sassower*, 121 A.D.2d 324, 503 N.Y.S.2d 392 (1st Dept.

1986). Sassower, an attorney, claims that his conviction and incarceration without a trial for non-summary criminal contempt violated his constitutional right to a trial. He also claims that he was subjected to double jeopardy and that the Referee, who made the contempt finding, and the Appellate Division, which imposed the sentence, were disqualified from acting. The petition was referred to me for report and recommendation by the Honorable David N. Edelstein, District Judge.

Petitioner's appeal to the New York Court of Appeals was dismissed "upon the ground that the order appealed from does not finally determine the proceeding...." *In the Matter of Barr v. Sassower*, 68 N.Y.2d 807, —— N.Y.S.2d ——, 498 N.E.2d 437 (1986). Although the Court of Appeals dismissed petitioner's appeal without reaching the merits, petitioner fairly presented to that Court the same factual and federal constitutional claims he raises here. That the Court of Appeals declined to hear the appeal from the criminal contempt finding which led to petitioner's incarceration, apparently because the underlying civil action was not final, does not foreclose federal review of that incarceration, which is presently ongoing. The State's highest court was given the opportunity to address the claim. Whether or not it chose to do so, the comity rationale of the exhaustion requirement has been met. I find that petitioner Sassower has exhausted his state remedies. *Daye v. Attorney General*, 696 F.2d 186, 191 (2d Cir.1982) (*en banc*).[1] For the reasons set forth below, I recommend that the petition for a writ of habeas corpus be granted.

The Special Referee relied upon the following orders: On February 1, 1982, New York State Supreme Court Justice Sinclair issued an Order disqualifying petitioner Sassower, an attorney, from appearing as counsel for a Mr. Raffe in "all other ac-

---

1. Petitioner's writ of habeas corpus in the New York Supreme Court was dismissed on the ground that "there was no basis for the granting of the within writ...." *Sassower v. Sheriff of Westchester County*, Slip op. No. 13503-86 (Au-

gust 4, 1986) (annexed as Exh. F. to Weissman Afft). However, having raised his claim to the State's highest court, there was no requirement—for exhaustion purposes—that Sassower pursue his claim further in the State courts.

tions or matters wherein George Sassower, Esq. represents an interest adverse to ... Eugene Dann, Robert Sorrentino and Puccini Clothes, Ltd." Report of the Special Referee (Report), p. 4 (Annexed as Exh. B to Weissman Afft.) *quoting* Justice Sinclair's Order. Justice Ira Gammerman issued an Order on January 23, 1985, permanently enjoining petitioner and Hyman Raffe from "filing or serving, or attempting to intervene in or initiate, in any court, tribunal, agency or other forum of this State, any lawsuit, proceeding, investigation or other adversary matter, and from making or filing a complaint, grievance or correspondence with a professional disciplinary or grievance committee the subject matter of which arises out of or relates to" nine categories enumerated by Justice Gammerman which collectively covered all parties, entities and litigants involved in the multitude of actions previously instituted by either petitioner or Hyman Raffe. Annexed as Exh. D to Weissman Afft.[2]

On January 30, 1985, Lee Feldman, the court-appointed receiver for Puccini Clothes, Ltd., brought a motion to punish petitioner for 64 counts of criminal contempt of court on the grounds that petitioner had repeatedly violated the Orders of Justices Sinclair and Gammerman. By Order of Supreme Court Justice Martin Evans, dated April 5, 1985, the Receiver's motion was referred to Special Referee Donald Diamond. According to Referee Diamond, petitioner's "not guilty" defense raised in his Affidavit in Opposition to the Motion was "tantamount to a general denial of the allegations contained in the petition...." Report, pp. 14–15. The Referee found that petitioner's "not guilty" defense "does not create a disputed issue requiring a hearing." Report, p. 15. According to Referee Diamond, "[n]o hearing" was "held for a confluence of reasons." Report, p. 5. Petitioner failed to allege any facts "disputing the detailed charges made by movant"; "the violations of the orders alleged to constitute contempt are matters

that are documented by the filing of court papers and matters that appear on the record, in court proceedings"; and petitioner served Referee Diamond "with an answer to the complaint" in a proceeding pending before the Departmental Disciplinary Committee in which petitioner asserted that "he has the right to ignore the disqualification order...." Report, pp. 7, 8, 9. Based on this, Referee Diamond found that "[t]he complaint made by the receiver in the disciplinary proceeding parallels those raised on this motion. Mr. Sassower's answer to that complaint establishes there is no need to hold a hearing herein." Report, p. 9.

Thus, without holding a trial or an evidentiary hearing, Referee Diamond found petitioner Sassower guilty of 63 counts of criminal contempt. He recommended that a fine of $250.00 for each offense be imposed and that petitioner be confined for a period of thirty days. Justice Evans adopted the Referee's findings of guilt but denied, with leave to renew, the Referee's recommendation that a fine and jail sentence be imposed. On January 21, 1986, Justice Evans denied the Receiver's renewed motion to confirm the Referee's report and to punish petitioner for contempt. The Appellate Division, First Department, reversed Justice Evan's denial of the Receiver's motion to renew and modified Justice Evan's Order of November 22, 1985, "only to the extent of imposing a sentence of thirty days incarceration and directing that a warrant of commitment issue forthwith...." *In re Jerome Barr, supra,* 503 N.Y.S.2d at 392. Petitioner was released on his own recognizance until August 6, 1986 when he was ordered to surrender himself.

After serving three days, petitioner's incarceration was temporarily stayed for medical reasons by an Order of the Appellate Division. On September 25, 1986, the stay was lifted. While released from custody petitioner filed the present habeas cor-

---

**2.** *In Raffe v. John Doe,* 619 F.Supp. 891, 899 (S.D.N.Y.1985), petitioner was permanently enjoined from commencing further actions in any federal court arising out of or related to the Puccini dissolution or receivership.

pus petition.[3] Initially, respondent argued that petitioner was not in custody, a prerequisite for the determination of a habeas corpus petition filed pursuant to 28 U.S.C. § 2254. In an Order issued on November 5, 1986, I found that the limitation on petitioner's freedom imposed by the outstanding incarceration order met the "in-custody" requirement of 28 U.S.C. § 2254. In a Rule 4 Order, also issued that day, I directed that the petition be served on the Sheriff of Westchester County and the Attorney General of the State of New York.[4] The respondent was directed to answer on the merits by November 19, 1986.

On November 19, 1986, petitioner was taken into custody to complete his term of incarceration and the answer of the Sheriff of Westchester County was filed. A hearing was held on November 24, 1986. The Sheriff of Westchester County, the Attorney General of the State of New York, the court-appointed receiver (who was permitted to intervene) and the New York District Attorney [5] were represented at the hearing. Pursuant to a writ ad testificandum, petitioner Sassower was produced from the Bronx House of Detention, where he is presently incarcerated.

"Criminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both. [C]onvictions for criminal contempt are indistinguishable from ordinary criminal convictions, for their impact on the individual defendant is the same." *Bloom v. Illinois*, 391 U.S. 194, 201, 88 S.Ct. 1477, 1481, 20 L.Ed.2d 522 (1968). Although certain factual situations may warrant procedures in a criminal contempt proceeding that are distinct from

the ordinary action, *e.g.*, *United States ex rel. Vuitton v. Karen Bags, Inc. (Klayminc,)* 592 F.Supp. 734 (S.D.N.Y.1984), *aff'd* with opinion, 780 F.2d 179 (2d Cir. 1985), *Bloom v. Illinois* has "left no doubt that contempt defendants are entitled to all fundamental procedural protections...." 592 F.Supp. at 741. Such fundamental procedures include a finding of guilty on the grounds that the evidence established, beyond a reasonable doubt, *In re Weiss*, 703 F.2d 653, 662 (2d Cir.1983), that the "requisite intent was present." *In re Irving*, 600 F.2d 1027, 1037 (2d Cir.1979).

Every Appellate Division in the State of New York has recognized the significance of *Bloom*. *N.A. Development Co. Ltd. et al. v. Carolyn Jones et al.*, 99 A.D.2d 238, 242, 472 N.Y.S.2d 363 (1st Dept.1984); *Holtzman v. Beatty*, 97 A.D.2d 79, 82, 468 N.Y.S.2d 905 (2d Dept.1983); *Ingraham v. Maurer*, 39 A.D.2d 258, 259, 334 N.Y.S.2d 19 (3rd Dept.1972); *State University of New York v. Denton*, 35 A.D.2d 176, 181, 316 N.Y.S.2d 297 (4th Dept.1970). In *Ingraham v. Maurer, supra*, 39 A.D.2d at 259, 334 N.Y.S.2d 19, the Court acknowledged, after citing *Bloom*, "that a criminal contempt proceeding is a criminal proceeding to which the basic fundamentals are applicable to the same extent as in any other criminal trial. While the *Bloom* case was directed solely at the issue of the right to a jury trial, it, nevertheless, equates the contempt proceeding with an ordinary criminal proceeding." In *N.A. Development Co. Ltd., supra*, 99 A.D.2d at 242, 472 N.Y.S.2d 363, the Appellate Division, First Department, citing *Bloom*, acknowledged that "[c]riminal contempt must apparently

---

**3.** Petitioner's proposed Order to Show Cause seeking a stay of his arrest and incarceration pending adjudication of his recently filed habeas corpus petition was referred to me. I declined to sign the order in a Memorandum dated September 29, 1986. Petitioner then made a motion seeking a stay of his arrest. That motion was denied in an Order dated November 5, 1986, which was adopted by Judge Edelstein on November 19, 1986.

**4.** A courtesy copy of the petition, the Rule 4 Order and the Order denying a stay were or-

dered delivered to the Clerk of the Appellate Division, First Department.

**5.** On or about November 17, 1986, petitioner applied for an order directing the New York District Attorney and the United States Attorney and/or an independent attorney appointed by the Court to intervene and represent the respondent, Westchester County. Although that motion bore a return date of November 26, 1986, the District Attorney appeared at the hearing as a friend of the court.

be proved beyond a reasonable doubt." *Accord, County of Rockland v. CSEA*, 62 N.Y.2d 11, 14, 475 N.Y.S.2d 817, 464 N.E.2d 121 (1984).

■ I find that the procedures afforded to petitioner prior to the Appellate Division order of incarceration did not comport with the mandates of the Fourteenth and Sixth Amendments of the United States Constitution. It is clear from the Referee's report that his recommendation was based entirely on the papers before him. Concededly, neither a full evidentiary hearing nor a public trial was afforded petitioner prior to the Referee's findings of guilt. Furthermore, there is no indication that the determination of guilt was based on a finding that the evidence proved petitioner's guilt, including the requisite intent, beyond a reasonable doubt. The reasons given by the Referee as justification for the conclusion that neither a hearing nor a trial as warranted failed to take into consideration the constitutional requirements of non-summary criminal contempt proceedings.

The receiver contends that petitioner's reliance on *Bloom v. Illinois* is misplaced because petitioner did not request a jury trial. The receiver has misconstrued both petitioner's claim and the significance of *Bloom*. Petitioner correctly relies on *Bloom* as support for his claim that a conviction for non-summary criminal contempt without a trial of any kind is unconstitutional.

The receiver's reliance on *Taylor v. Hayes*, 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974), as support for the assertion that a State can punish someone for non-summary criminal contempt without any trial when the term of incarceration imposed does not exceed six months misconstrues the holding in *Taylor*. *Taylor* involved a conviction for criminal contempt where the contemptuous acts occurred in open court during the course of a criminal trial. 418 U.S. at 489, 94 S.Ct. at 2698. At the conclusion of the trial, Taylor was sentenced to a jail term of four and one-half years for his contemptuous acts. 418 U.S. at 489, 94 S.Ct. at 2698. While his appeal

was pending, the sentence was reduced to six months. The Supreme Court held that, after a conviction for criminal contempt, the State may reduce a sentence to six months or less rather than retry the contempt charge with a jury. 418 U.S. at 496, 94 S.Ct. at 2702.

The Court in *Taylor* also held that, even where the contempt occurs in the courtroom in the presence of the judge, the justification for summary action is less cogent when final adjudication and sentence are postponed until after trial. Where the contempt occurs before the eyes of a judge, a full-scale trial might not be necessary, said the Court, but it found that the procedures invoked against Taylor were constitutionally infirm. Thus, *Taylor* expanded the protections accorded in summary contempt cases. Nothing in *Taylor* suggests that where, as here, a non-summary contempt is charged, no trial is required unless a term of six months imprisonment is imposed.

The receiver's suggestion that, because the contempt proceeding was brought under the Judiciary Law (Section 750 *et seq.*) and not under the Penal Law, it was civil in nature (and therefore no trial was needed) is rejected. The receiver himself characterized his motion as one "for an order punishing George Sassower for 64 counts of criminal contempt of court." Notice of Motion dated Jan. 30, 1985. The referee and the Appellate Division also identified the proceeding as one for criminal contempt. There is no basis for now treating the contempt charged as civil.

Since Sassower was deprived of his right to a trial prior to being found guilty of criminal contempt, I recommend that the petition for a writ of habeas corpus be granted. Copies of this report and recommendation are today being served upon petitioner and upon all counsel who appeared at the hearing. They are advised that any objections to this report should be served and filed, with a courtesy copy hand-delivered to Judge Edelstein's chambers and a copy to me, by 10 a.m. Wednesday, November 26, 1986. *See United States v. Bar-*

*ney,* 568 F.2d 134, 136 (9th Cir.1978) (less than ten days to object to Magistrate's report permitted where circumstances warrant shortened time period). The parties were advised at the hearing of what my report would recommend and they will be advised telephonically that they can pick up a copy of this report today.[6] Mitchell Sassower, Esq. has agreed to pick up a copy of the report and recommendation and deliver it to petitioner.

---

**6.** Only the receiver addressed the merits of this petition. The Sheriff of Westchester County chose not to address the merits of the petition either in the papers that were filed or at the hearing. The Attorney General's Office filed no papers and at the hearing the Assistant Attorney General indicated that that office has "no interest" in this habeas corpus petition.